**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-5224

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

DAVON PERRY,

                Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   J. Frederick Motz, District Judge.
(1:08-cr-00165-JFM-1)

Argued:  March 25, 2010                Decided:  June 3, 2010

Before NIEMEYER and KING, Circuit Judges, and Eugene E.
SILER, Jr., Senior Circuit Judge of the United States Court of
Appeals for the Sixth Circuit, sitting by designation.

Affirmed by unpublished opinion.  Senior Judge Siler wrote the
opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:** Thomas J. Saunders, Baltimore, Maryland, for Appellant.
Michael Joseph Leotta, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein,
United States Attorney, Traci L. Robinson, Assistant United
States Attorney, Nick Stewart, Law Clerk, OFFICE OF THE UNITED
STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SILER, Senior Circuit Judge:

Davon Perry appeals his jury conviction of carjacking, 18 U.S.C. § 2119 (Count One), and use of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two). He alleges that there was insufficient evidence as to his intent for the carjacking conviction, and that his firearm conviction must also be vacated. He also challenges the jury instruction given for § 2119's intent element. For the following reasons, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

Latia Skeens started dating Perry in December 2006. She ended their relationship after it became abusive, sought help from a domestic violence center, and obtained a protective order against Perry in August 2007. Nonetheless, he continued to call, follow, and threaten her. In February 2008, Perry asked Skeens to attend a Super Bowl party with him. She declined, but he called her between twenty and thirty times on February 3, 2008, the night of the Super Bowl, while she was at a friend's party. Skeens left the party between 10:30 p.m. and 11 p.m. to visit her friend Angel.

While she was at Angel's house, Skeens called Perry and left a voice message on his phone. Perry eventually returned Skeens's call and she told him that she was at Angel's house.

2

After their conversation, Skeens left Angel's house to drive around before picking up her sister. She parked about a block away from Angel's house, behind a tow truck.

While Skeens was still parked, Perry bumped Skeens's car from behind with his car. Skeens tried to get out of her car, but Perry told her to stay in the car and to open the passenger door. Skeens let Perry in the car because he had a gun and the tow truck prevented her from driving away. After Perry got into the car, he yelled at Skeens, told her she was going to die, and punched her in her face. Perry ordered her to drive to a studio, where he said he was going to kill her.

When they arrived at the studio, they both exited the car. Skeens broke away, however, and got back into her car. As she accelerated it, Perry ran toward her car, pointing the gun at her. Skeens hit a wall, and put the car in reverse, running over Perry. Two men approached the scene and spoke with Perry. Skeens heard him tell the men "to get the chopper [gun] and to shoot [her]," and saw him hand them the gun. Skeens then found her phone and called 911. When police arrived, both Skeens and Perry were sent to the hospital for treatment.

Perry objected to the government's jury instruction number 30, which described intent under § 2119. The proffered instruction stated that "To establish this element the Government must prove that at the moment the defendant demanded

3

or took control over the vehicle the defendant possessed an intent to seriously harm or kill the driver, if necessary, to steal the car, or for any other reason." Perry objected to the inclusion of the clause "or for any other reason." The district court suggested striking the phrase "if necessary to steal a car or for any other reason." Perry did not object to that resolution and stated that he "tend[ed] to agree with the Court."

Perry was convicted on both counts and sentenced to 180 months on each count, to run consecutively.

## II. ANALYSIS

### A. Sufficiency of the Evidence

"[A] jury's verdict must be upheld if there is substantial evidence in the record to support it." United States v. Foster, 507 F.3d 233, 244 (4th Cir. 2007) (citing Glasser v. United States, 315 U.S. 60, 80 (1942)). To secure a conviction under § 2119, the government must prove that the defendant "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." Id. at 246-47 (internal quotation marks and citation omitted). Perry only disputes whether the government produced sufficient

4

evidence of his intent, the first element. Specifically, he argues that there was not sufficient evidence of his intent, because whatever intent he had to harm Skeens "had nothing to do with the car itself."

In Holloway v. United States, 526 U.S. 1 (1999), the Supreme Court rejected the petitioner's argument that intent under § 2119 only encompasses unconditional intent—"the intent to harm or kill even if not necessary to complete a carjacking." Id. at 8. Instead, it held that § 2119 allows for a conviction when there is proof of either unconditional or conditional intent—intent which is only fully formed if the driver of the car refuses to relinquish control. Id. Thus, the Court concluded that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." Id. at 12.

Although Foster only referred to Holloway's conditional intent language and did not quote the alternative, "if unnecessary to steal the car" language, unconditional intent is still a valid form of intent. Thus, a defendant who possesses the intent to kill or seriously harm the driver of a vehicle may be convicted of carjacking, even if his intent to harm is

5

unrelated to the carjacking, so long as his intent is formed when he takes control of the vehicle and he satisfies § 2119's other elements.

United States v. Applewhaite, 195 F.3d 679 (3d Cir. 1999), is not contrary to this conclusion. In Applewhaite, the Third Circuit concluded that there was insufficient evidence for the jury to conclude that the defendants intended to kill or cause serious bodily harm when they took control of the vehicle, because there was no nexus between the assault on the victim and the subsequent taking of his van. Id. at 685. Intent was not established, because "the van was taken as an afterthought in an attempt to get [the victim's] limp body away from the crime scene." Id. at 685.

Unlike the defendants in Applewhaite, however, there was sufficient evidence from which the jury could conclude that Perry possessed the requisite intent at the moment he took control over Skeens's car. For example, Skeens said that Perry had threatened her, used a gun to demand entry into her car and to force her to continue driving, and continually stated he was going to kill her. Under Holloway, it is irrelevant whether Perry intended to kill or harm Skeens so that he could take her car or whether he only wanted to kill her. The government simply needed to prove that when he took control over her car—a fact Perry does not dispute on appeal—he possessed the intent to

6

kill her.  Viewing the evidence in the light most favorable to the government, there was sufficient evidence from which the jury could conclude that he intended to kill or seriously harm Skeens when he took control over her vehicle.

B.   Jury Instruction

Although we typically review challenges to jury instructions for an abuse of discretion, S. Atl. Ltd. P'ship v. Riese, 284 F.3d 518, 530 (4th Cir. 2002), where the defendant fails to challenge the instructions before the district court, our review is for plain error, Foster, 507 F.3d at 249 (citing United States v. Olano, 507 U.S. 725, 732 (1993)).  Perry challenged the government's proposed jury instruction, but he did not challenge the ultimate instruction adopted by the court and even stated that he "tend[ed] to agree with the Court." Thus, we review for plain error.

"On plain error review, we will reverse the district court if we (1) identify an error, (2) which is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. at 249.  Even if a defendant demonstrates plain error, we will only notice a forfeited error if a "miscarriage of justice would result."  United States v. Cedelle, 89 F.3d 181, 184 (4th Cir. 1996).

The court's instruction, in relevant part, was as follows:

> The third element the Government must prove beyond a reasonable doubt is that the defendant acted with intent to cause death or serious bodily harm. . . . Now to establish the third element the Government must prove that at the moment the defendant demanded or took over the vehicle, the defendant possessed the intent to seriously harm or kill the driver.

Perry asserts that the instruction's failure to include the "if necessary to steal the car" phrase from Holloway, was erroneous. However, this argument overlooks the remainder of the sentence in Holloway: "or, alternatively, if unnecessary to steal the car." 526 U.S. at 12. The district court's instruction correctly allowed the jury to convict Perry under either interpretation of intent, so long as that intent was formed at the time Perry took control over the vehicle. Thus, we cannot say that the district court committed any error, particularly plain error.[*]

AFFIRMED

---

[*] Because we affirm Perry's conviction on Count One, his arguments as to Count Two are moot.

8